# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GEORGE A. BELTRAN**, | Case No. 3:15-CV-00785-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES OF AMERICA, FEDERAL BUREAU OF PRISONS, FEDERAL SATELLITE PRISON CAMP AT SHERIDAN, WARDEN MARION FEATHERS IN THE FEDERAL PRISON CAMP**, in her individual capacity, **COUNSELOR PEREZ**, in his individual capacity, **COUNSELOR MOCK**, in his individual capacity, **COUNSEL RUIZ**, in his individual capacity, **COUNSELOR EVERHART**,[1] | |
| Defendants. | |

George A. Beltran, Reg. #29768-298, Sheridan Federal Correctional Institution, P.O. Box 6000, Sheridan, OR 97378. Pro Se.

Billy J. Williams, Acting United States Attorney, and Jared Hager, Assistant United States Attorney, U.S. Attorney's Office District of Oregon, Civil Division, 1000 SW Third Ave, Suite 600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

---

[1] Defendants note that "Warden Marion Feathers" is Marion Feather; "Counselor Perez" is Efren Perez; "Counselor Mock" is Robin Mock; and "Counselor Everhart" is Carl Earhart, Jr. "Counselor Ruiz" has not yet been identified. The Court notes that failure to correctly identify government officers by name is not fatal to the complaint. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 390 n.2 (1971).

Plaintiff George Beltran ("Beltran") brings suit against the United States, the Federal Bureau of Prisons ("BOP"), the Satellite Federal Correctional Institution in Sheridan, Oregon ("Sheridan"), Warden Marion Feather, and several individual BOP officers under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Beltran alleges that disciplinary action that prevents him from speaking over the telephone to his wife and children violates his freedom of speech and that Defendants' disciplinary procedures violated his due process rights. Beltran further alleges that Defendants subjected him to disability discrimination and cruel and unusual punishment by denying him proper medical care. Beltran requests injunctive and declaratory relief and a damages award of $150.00 for every day he has been in pain since his incarceration. Defendants move to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment for failure to exhaust administrative remedies.

For the reasons stated below, the Court grants Defendants' motion to dismiss with prejudice the claims against the United States, BOP, and Sheridan. The Court grants Defendants' motion to dismiss without prejudice all claims against Warden Feather and the remaining individual BOP officers.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss, the "court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or

matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also consider documents on which the complaint necessarily relies if the parties do not dispute the authenticity of the documents and "matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## BACKGROUND

Beltran is currently serving a 120-month sentence at Sheridan. Beltran asserts that he suffers from back pain and prostate gland issues. According to Beltran, the back pain started after a soccer injury he suffered sometime in 2013 while serving time at the Federal Correctional Institution in Lompoc, California. Beltan was transferred to Sheridan on May 5, 2014, where he alleges he has received inadequate medical treatment for his pain. Beltran alleges that BOP doctors have not ordered proper x-rays for his lower back or prescribed him proper medication for his prostate.

Beltran further alleges that on April 21, 2015, prison guards searched his cell while Beltran was at work at the Bakery. The guards confiscated an extra mattress that Beltran had put on his bed to help with his back pain. For having this extra mattress, Beltran was required to participate in a Unit Disciplinary Committee ("UDC") hearing with Defendants Counselor Perez, Counselor Mock, Counselor Ruiz, and Counselor Earhart. At the hearing, Counselor Earhart found that Beltran violated Code 305, which prohibits prisoners from possessing "anything not authorized." As a result of the violation, Beltran lost his telephone privileges for 30 days and his commissary privileges for 60 days. Beltran asserts that he has a medical need for the extra mattress and that non-disabled inmates are allowed to have more than one mattress. The report of Beltran's Code 305 violation specified that the Committee advised Beltran of its findings and of Beltran's right to file an appeal within 20 days. Beltran did not file an appeal.

## DISCUSSION

The Court construes Beltran's complaint as alleging claims under *Bivens*. 403 U.S. 388.

A *Bivens* claim is the "federal analogue to suits brought against state officials under . . .

42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). *Bivens* provides "an

implied private action for damages against federal officers alleged to have violated a citizen's

constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

### A.  Claims against the United States, BOP, and Sheridan

Absent a waiver of sovereign immunity, the United States and its agencies are immune

from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Loeffler v. Frank*, 486 U.S. 549, 554

(1988). The United States "may waive its sovereign immunity, but any waiver must be

unequivocally expressed in statutory text and will not be implied." *Ordonez v. United States*, 680

F.3d 1135, 1138 (9th Cir. 2012) (citation and internal quotation marks omitted). A "waiver of

sovereign immunity is a prerequisite to federal-court jurisdiction." *Tobar v. United States*, 639

F.3d 1191, 1195 (9th Cir. 2011). The United States has not waived its sovereignty for civil rights

claims arising under the Constitution. *See Rivera v. United States*, 924 F.2d 948, 951 (9th

Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims

against the United States, because the United States has not waived sovereign immunity with

respect to such claims.").

As the Ninth Circuit has clarified, "*Bivens* does not provide a means of cutting through

the sovereign immunity of the United States itself." *Arnsberg v. United States*, 757 F.2d 971,

980 (9th Cir. 1985). A *Bivens* claim is a "remedy . . . recoverable against individuals." *Carlson v.

Green*, 446 U.S. 14, 21 (1980). Because the United States, BOP, and Sheridan are not individuals

and are subject to sovereign immunity, Beltran cannot state a *Bivens* claim against these

Defendants.

**B.  Claims against Warden Feather**

*Bivens* does not allow for holding a supervisor vicariously liable. *Iqbal*, 556 U.S. at 676 (noting that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). To state a *Bivens* claim against a supervisor, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

Beltran makes the following claim against Warden Feather:

> The Warden Marion Feathers [sic] is responsible for the improper oversight of the overt acts being carried out by her subordinated employees in the instant motion and is therefore implicated only by her failure to act according to her responsabilities [sic] to review the complain [sic] that the plaintiff has submitted to attempt to obtain administrative relief for adequate medical care that has been discriminatorily and prejudicially ignored.

Dkt. 2 at 2. The only allegation that Beltran makes relating to Warden Feather's individual actions is that she failed to review a complaint about Beltran's medical care. Beltran does not, however, assert that Beltran filed a formal request for an administrative remedy, as required by 28 C.F.R. §§ 542.10-542.19, regarding his medical treatment at Sheridan. Beltran explicitly acknowledges in his complaint that he chose not to submit such a request. Dkt. 2 at 4. Thus, there was no complaint that Warden Feather could have failed to review. The other allegations against Warden Feather relate only to Warden Feather's supervisory role and are insufficient to establish Warden Feather's individual liability under *Bivens*.

**C.  Claims against Remaining Individual Officers**

*Bivens* provides "an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally" and "a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct."

*Malesko*, 534 U.S. at 70 (emphasis omitted). The purpose of a *Bivens* claim "is to deter individual federal officers . . . from committing constitutional violations." *Id.*

The Ninth Circuit uses identical analyses for actions under § 1983 and those under *Bivens* "save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). To establish liability under *Bivens*, a plaintiff must show: (1) that a person acting under color of law committed the conduct at issue; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity protected by the U.S. Constitution or the laws of the United States. *See Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person commits a constitutional deprivation within the meaning of *Bivens* "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis and alteration in original) (internal quotation marks omitted).

The factors a plaintiff must plead to establish a *Bivens* claim "will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676. As an initial matter, Beltran fails to state a claim under the Fourth, Sixth, and Fourteenth Amendments. Beltran has not stated a claim under the Fourth Amendment because he had no expectation of privacy in his prison cell. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). Beltran has not stated a claim under the Sixth Amendment because the Sixth Amendment only applies to criminal prosecutions. *See* U.S. Const. Amend. VI. Beltran alleges no facts relating to criminal prosecution. Beltran also has not stated a claim under the Fourteenth Amendment, which only

applies to the states, not to the federal government. *See* U.S. Const. Amend. XIV. Beltran alleges

no claims against state government officials.

### 1. First Amendment Claim—Freedom of Speech

Courts analyze prisoners' free speech claims under the First Amendment "in terms of the

legitimate policies and goals of the corrections system, to whose custody and care the prisoner

has been committed in accordance with due process of law." *Pell v. Procunier*, 417 U.S. 817,

822 (1974); *see Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges

on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests."). Restrictions on a prisoner's speech "must be viewed in the light of the

alternative means of communication permitted under the regulations with persons outside the

prison." *Pell*, 417 U.S. at 823.

The Ninth Circuit has stated that prisoners have a First Amendment right to telephone

access, "subject to reasonable security limitations." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th

Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). In a later case,

the Ninth Circuit clarified that "the First Amendment right at issue" in cases involving inmates'

telephone access is ultimately "the right to communicate with persons outside prison walls" and

is subject to the analysis used in *Turner*, 482 U.S. 78. *Valdez v. Rosenbaum*, 302 F.3d 1039,

1048-49 (9th Cir. 2002).

The *Turner* analysis examines four factors:

> (1) whether there is a valid, rational connection between the
> restriction and the legitimate governmental interest put forward to
> justify it; (2) whether there are alternative means of exercising the
> right; (3) whether accommodating the asserted constitutional right
> will have a significant negative impact on prison guards and other
> inmates, and on the allocation of prison resources generally; and
> (4) whether there are obvious, easy alternatives to the restriction
> showing that it is an exaggerated response to prison concerns.

*Valdez*, 302 F.3d at 1049 (citing *Turner*, 482 U.S. at 89-90). Based on the *Turner* analysis, courts

have found 30-day restrictions on telephone use by prisoners to be a reasonable limitation. *See,*

*e.g.*, *Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1270 (E.D. Cal. 2009); *see also Almahdi v. Ashcroft*,

310 F. App'x 519, 522 (3d Cir. 2009) (stating that "reasonable restrictions on telephone

privileges do not violate [prisoners'] First Amendment rights" and holding that a restriction to

one phone call per month was reasonable).

Beltran alleges that the Defendants deprived him of his freedom of speech by taking

away his ability to speak with his family over the telephone for 30 days. According to the first

*Turner* factor, the restriction on Beltran's telephone use must have "a valid, rational connection"

to a "legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89

(quotation marks and citation omitted). In determining whether a valid, rational connection

exists, courts must give prison regulations deferential review. *Mauro v. Arpaio*, 188 F.3d 1054,

1058 (9th Cir. 1999) (citing *Turner*, 482 U.S. at 89). Thus, the "only question is whether prison

administrators reasonably could have thought the regulation would advance legitimate

penological interests." *Prison Legal News v. Cook*, 238 F.3d 1145, 1150 (9th Cir. 2001). While

Defendants do not directly address Beltran's First Amendment claims, they do articulate a

penological interest in deterring prisoners from keeping unauthorized items in their cells. Prison

administrators could reasonably have believed that the threat of restrictions on telephone use

serves to deter possession of unauthorized items. Subjecting Beltran to this restriction was part of

the deterrence program. Thus, the 30-day restriction on Beltran's telephone use for possessing an

unauthorized item is rationally connected to a legitimate penological interest.

The second *Turner* factor looks at "whether there are alternative means of exercising the

right that remain open to prison inmates." *Turner*, 482 U.S. at 90. While Defendants restricted

Beltran's ability to communicate with people outside the prison walls via telephone, Beltran does not assert that he was simultaneously denied the ability to write and receive letters or to receive visitors. Alternative channels of speech, including mail and speaking to visitors, thus remained open to Beltran.

The third *Turner* factor examines the effect that the exercise of the constitutional right would have on prison staff, prison resources, and other inmates. *Id.* The restriction on Beltran's telephone usage is limited, and Defendants do not argue that a longer restriction on Beltran's freedom of speech is necessary due to effects on staff, resources, or inmates. This factor generally comes into play when prison administrators place blanket regulations on speech, such as the ability of prisoners to possess sexually explicit materials. *See Mauro*, 188 F.3d at 1061. The third Turner factor thus has little applicability in this case.

Finally, the fourth *Turner* factor requires courts to consider whether "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* at 1062. The prisoner challenging the speech restriction bears the burden of showing the existence of such alternatives. *Mauro*, 188 F.3d at 1062. Prison administrators could have placed alternative, less burdensome restrictions on Beltran, such as a ten-day suspension of Beltran's use of the telephone rather than a 30-day suspension. This factor, however, "is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Additionally, as the Supreme Court has emphasized on multiple occasions, "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.* at 89 (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)) (alteration in

original). Defendants' judgment that a 30-day restriction best served the penological interest in question is thus entitled to deference. Although different sanctions could have been imposed instead of 30-day telephone restriction, Beltran does not allege facts showing that the alternatives are obvious and easy ways to still deter the possession of unauthorized items. On the whole, the *Turner* factors favor Defendants, and Beltran fails to state a claim for First Amendment violations.

### 2.    Discrimination Claims

Beltran alleges that the Defendants discriminated against him based on his disability (his back injury) in violation of the Fifth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–213, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[2] For a claim of invidious discrimination in violation of the Fifth Amendment, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676.[3] The defendant must have "undert[aken] a course of action 'because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" *Id.* at 676-77 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (second alteration in original). Section 504 similarly requires that the alleged discriminatory conduct occur "solely by reason of [the claimant's] disability."

Beltran asserts that his cell was subject to a random search that uncovered his unauthorized second mattress. According to Beltran, he was required to participate in a UDC

---

[2] The Court notes that the ADA does not apply to federal agencies. *See* 42 U.S.C. § 12131(1) ("The term 'public entity' means . . . any State or local government" or "any department, agency, special purpose district, or other instrumentality thereof.").

[3] The Fifth Amendment's Due Process Clause contains an implied guarantee against denials of equal protection of the laws by the federal government. *Boiling v. Sharpe*, 347 U.S. 497, 500 (1954).

hearing in which he reported that he needed the mattress because of his disability. At that time, asserts Beltran, Defendants chose to discipline Beltran by suspending his telephone and commissary privileges because of his disability. Beltran does not assert that Defendants knew of his disability before the hearing or required Beltran to participate in the hearing solely because of his disability. Beltran does assert that non-disabled inmates receive only verbal reprimands for having extra mattresses. He does not, however, state when in the disciplinary process these verbal reprimands occur. Nor does Beltran offer any factual allegations regarding whether non-disabled inmates similarly subject to random searches and UDC hearings escape punishment at the hearings because they are not disabled. Because Beltran makes no factual allegations that non-disabled inmates in hearings for Code 305 violations receive more favorable treatment than Beltran did based on his disability, Beltran does not state a claim under the Fifth Amendment or § 504.

Additionally, Beltran asserts that white inmates receive only verbal reprimands for having extra mattresses whereas he received restrictions on his telephone and commissary privileges. Beltran never alleges, however, that he received discriminatory treatment because of his race. Beltran never states that he identifies as non-white. Thus, although courts analyze prison regulations that involve suspect classifications such as race under strict scrutiny, Beltran has not stated a claim for racial discrimination under the Fifth Amendment. *See Johnson v. California*, 543 U.S. 499, 509 (2005).

### 3. Fifth Amendment Claim—Due Process

Beltran further alleges a procedural due process violation in contravention of the Fifth Amendment. The Due Process Clause affords prisoners protection against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)

(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted).

Although the significance of the hardship is a case-by-case determination, courts look to certain

"guideposts":

> 1) whether the challenged condition 'mirrored those conditions imposed upon
> inmates in administrative segregation and protective custody,' and thus comported
> with the prison's discretionary authority; 2) the duration of the condition, and the
> degree of restraint imposed; and 3) whether the state's action will invariably
> affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). If an inmate does have a

protected liberty interest or "[i]f the hardship is sufficiently significant, then the court must

determine whether the procedures used to deprive that liberty satisfied Due Process."

*Ramirez*, 334 F.3d at 860.

The procedures required before a prisoner may be deprived of a protected liberty interest

or made to endure a significant hardship include the following: (1) written notice of charges at

least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders as to the

evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and

present documentary evidence if doing so will not jeopardize institutional safety or correctional

goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or

prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).

Beltran asserts that he had a liberty interest in communicating with his family over the

telephone. He also asserts that allowing him to suffer from back pain without a second mattress

amounts to significant hardship. According to Beltran, the UDC hearing lacked the safeguards

required before the prison could deprive him of this liberty interest and impose the hardship.

Beltran states that the committee did not take into account his medical need for the mattress and

that the committee denied him a chance to present documentary evidence. Additionally, Beltran

asserts that he was not afforded an opportunity to call witnesses. Finally, Beltran asserts that the hearing was not impartial because Counselor Mock, the officer who initially wrote the disciplinary report, participated in the hearing. Defendants respond that Beltran did have the benefit of all the procedures outlined in *Wolff*.

The Court does not reach the issue whether the procedural safeguards afforded in the UDC hearing are adequate because Beltran has not articulated a protected liberty interest or significant hardship. As previously discussed, the Ninth Circuit has clarified that inmates have a protected interest in communicating with people outside of the prison walls, but telephone access is but one a "means of exercising this right." *Valdez*, 302 F.3d at 1048. For the reasons already stated, the 30-day suspension of telephone access still allowed Beltran alternative means of communication. Additionally, a 30-day telephone suspension is not a loss of liberty of the kind produced by an involuntary commitment or involuntary administration of psychotropic drugs, two of the few protected liberty interests the Supreme Court has identified in the prison context. *See Washington v. Harper*, 494 U.S. 210, 221 (1990); *Vitek v. Jones*, 445 U.S. 480, 493 (1980). Beltran thus has not identified a protected liberty interest in continuous telephone access for 30 days.

Additionally, while Beltran may suffer from severe back pain, he has not alleged facts showing that denial of a second mattress imposed a significant hardship. Under the first guidepost, Beltran has not asserted that other inmates typically receive extra mattresses or that Beltran was ever entitled to another mattress. Thus, denial of a second mattress does not represent a "dramatic departure from the basic conditions" of Beltran's sentence and thus mirrors conditions imposed upon inmates in general. *See Sandin*, 515 U.S. at 485. Under the second guidepost, the duration of Beltran's ailment (back pain worsened by denial of a second mattress)

is not alleged to be permanent—Beltran does not assert that he was unable to obtain a second mattress by filing a request for an administrative remedy as provided for by 28 C.F.R. §§ 542.10-542.19. Finally, under the third guidepost, denial of a second mattress does not affect the duration of Beltran's sentence. The Court thus finds that Beltran has not stated a claim for violation of the Fifth Amendment's Due Process Clause.

### 4. Eighth Amendment Claim—Cruel and Unusual Punishment

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Failure to provide a prisoner with adequate medical care violates the Eighth Amendment's prohibition on cruel and unusual punishment if a prisoner makes certain showings. To establish a *Bivens* or § 1983 claim, a prisoner must first show that the prison official deprived him of the "minimal civilized measure of life's necessities." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotations and citation omitted). Second, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care" does not rise to the level of deliberate indifference to serious medical needs. *Id.* at 105-06.

Beltran asserts that Defendants failed to provide him with a second mattress, that doctors have not ordered x-rays for his back, and that doctors have not prescribed the proper medication for his prostate gland issues. Beltran does not allege facts showing that the second mattress was one of "life's necessities." His allegations strongly resemble those found insufficient to state a claim in *Estelle*: "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court [under state tort law]." *Id.* at 107. Additionally, the emails to and from Health Services that Beltran attached as exhibits to his complaint show repeated answers to and concern

for Beltran's medical needs.[4] *See* Dkt. 2-2 at 3-9. Most importantly, Beltran's allegations that he received inadequate medical treatment do not implicate the named individual officers, who are not alleged to have any medical treatment roles at Sheridan. Beltran has not sufficiently alleged deliberate indifference to his medical needs on the part of any Defendants. Accordingly, the Court finds that Beltran has not stated a claim under the Eighth Amendment.

## CONCLUSION

Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 18) is GRANTED. Beltran's claims against the United States, BOP, and Sheridan are dismissed with prejudice. Beltran's claims against Warden Feather, Counselor Perez, Counselor Mock, Counselor Ruiz, and Counsel Everhart (Earhart) are dismissed without prejudice. Beltran has leave to file an amended complaint within 30 days. Unless Beltran files an amended complaint within 30 days that cures the deficiencies in his pleading as identified in this Opinion and Order, the Court will enter Judgment in favor of Defendants.

**IT IS SO ORDERED**.

DATED this 30th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[4] The Court considers these exhibits without converting the motion to dismiss into a motion for summary judgment pursuant to the standards set forth in *Ritchie*, 342 F.3d at 908.